CROSNER LEGAL, P.C.
Jennifer L. MacPherson (SBN 202021)
*jmacpherson@crosnerlegal.com*
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEYONNA DANIELS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE FAMILY FOODS GROUP LLC D/B/A EAGLE FOODS, a Delaware limited liability company,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Keyonna Daniels ("Plaintiff") individually, and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, hereby brings this action against Defendant Eagle Family Foods Group LLC d/b/a Eagle Foods ("Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.      Eagle Family Foods manufactures, labels, markets, and sells the dry dinner mixes, Hamburger Helper and Tuna Helper, in stores throughout the United States, including California.

2.      Hamburger Helper is a packaged food product. As boxed, it consists of dried pasta, with powdered seasonings in a packet. Consumers are meant to combine the contents of the box with browned ground beef, water, and, with some varieties, milk, to create a complete one-dish meal.

3.      Defendant also makes Tuna Helper boxed dinners to which tuna is to be added respectively.

4.      The meat (beef, tuna) is not included in the Hamburger Helper dinners, but rather must be purchased separately. The Hamburger Helper and Tuna Helper packaged dinners are referred to collectively as "Hamburger Helper."

5.      Hamburger Helper offers a variety of flavors, including Cheeseburger Macaroni, Double Cheeseburger Macaroni, Bacon Cheeseburger, Cheesy Beef Pasta, Cheesy Ranch Burger, Chedder Cheese Melt, Three Cheese, Cheesy Italian Shells, Tuna Cheesy Pasta, and Four Cheese Lasagna (the "Products").

6.      The Product names combined with representations made on the front box of each Product is meant to and does give the impression that the Products are made with more than a *de minimis* amount of real cheese. In other words, they give consumers the impression the Products contain a greater relative and absolute amount of cheese than they actually do.

CROSNER LEGAL. P.C.

1

1
2
3
4
5
6

7.    Cheese is a characterizing ingredient in each of the Products, where the name of each Product contains a variation of the word cheese. The front package of the Products claim they are "Made with Real Cheese," and all but one of the Products claim to contain a "Creamy & Cheesy Sauce." These claims are reinforced by the picture on the front of the box that shows a large bowl of cheesy pasta.

7
8
9

8.    The problem is the Products contain a *de minimis* amount of cheese, less than 2%. As such, representations on the front of the box that the Products are "Made with Real Cheese" is false and misleading to reasonable consumers.

10

## JURISDICTION AND VENUE

11
12
13
14
15

9.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

16
17
18
19
20
21
22
23
24
25
26
27
28

10.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the formulation, ingredients, manufacturing, labeling, marketing, and sale of the Products in California, specifically in this District. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold the Products to Plaintiff and

members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally expressly aimed conduct at California that caused harm to Plaintiff and the Class, which Defendant knows is likely to be suffered by Californians.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Venue is further proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiff purchased one or more of the Products within this District.

## PARTIES

12. Eagle Family Foods Group LLC, doing business as Eagle Foods, is an American food company with its corporate headquarters at 1975 E. 61st Street, Cleveland, Ohio 44103. Defendant is organized in Delaware as a limited liability corporation.

13. Eagle Family Foods sells condensed and evaporated milk, popcorn, french fries, sweet onion sticks, and pasta dishes, including the Hamburger Helper Products.[1]

14. Defendant distributes and sells the Products in stores throughout the United States, including California.

15. Plaintiff, Keyonna Daniels, is a resident of Sacramento, California. Plaintiff purchased Hamburger Helper products, including the Cheeseburger Macaroni product, numerous times during the class period, primarily from a local WinCo Foods in Sacramento, California.

---

[1] *General Mills Completes Sale Of Helper And Suddenly Salad Businesses*, BUSINESS WIRE (July 5, 2022), *available at* https://www.businesswire.com/news/home/20220705005113/en/.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9

16.     Plaintiff read and relied on the representations made on the front package of the Products, including the Cheeseburger Macaroni, that represented the Products were "Made with Real Cheese," and thus contained more than a *de minimis* amount of real cheese. This message was reinforced by the picture of a large bowl of cheesy pasta appearing on the front of each Product box and the fact that cheese was a characterizing ingredient of each Product, where the names of each Product contained a variation of the word "cheese" (e.g., Cheeseburger, cheesy, cheese). Based on these representations Plaintiff expected the Products to contain more than a *de minimis* amount of real cheese, not two percent or less.

10
11
12
13

17.     Plaintiff paid more for the Products than she would have had she known the representations and omissions were false and misleading or would not have purchased them. The value of the Products that Plaintiff purchased was materially less than their value as represented by Defendant.

14
15
16

18.     As a result, Plaintiff suffered injury in fact when she spent money to purchase the Products she would not have purchased or would have paid less for absent Defendant's misconduct.

17

**HAMBURGER HELPER IS A HOUSEHOLD NAME**

18
19

19.     Hamburger Helper has been a household name since the early 1970s and was an "instant success" offering a one-pan solution to mealtime.[2]

20
21

20.     Hamburger Helper is a dry dinner mix to which users can add meat and other ingredients, and which can be made in thirty minutes or less.

22
23
24
25
26

21.     Today there are at least three brands of Hamburger Helper, each of which is designed for the addition of a specific meat, mainly beef, tuna or chicken. These include Hamburger Helper to which consumers are expected to add beef; Tuna Helper to which tuna is to be added; and Chicken Helper designed for chicken dinners. For all the above, the meat is to be purchased and added

27
28

[2] General Mills, *How Helper got its Start* (Feb. 9, 2017), *available at* https://www.generalmills.com/news/stories/how-helper-got-its-start.

4

CROSNER LEGAL, P.C.

separately by consumers.

22.    Under each of these three brands are a variety of products made with different spices and other ingredients to give consumers a variety of quick meal options.

23.    As of 2017, Hamburger Helper came in 41 varieties, and it was estimated that more than 1 million households ate Hamburger Helper for dinner each weeknight.[3]

24.    In 2022, Eagle Family Foods acquired the Hamburger Helper brand from General Mills. That year, Hamburger Helper generated $248.6 million in U.S. sales, and in 2023 sales hit $272.2 million, reaching a 20% market share.[4]

25.    Since purchasing Hamburger Helper, Eagle Foods has aimed to reformulate and revitalize the brand. According to Mala Wiedemann, Eagle Foods' executive vice president of marketing and research and development, Eagle Foods believes in "quality products" and is "willing to put money back in the box and not charge for it." For instance, Hamburger Helper's lasagna recipe includes more cheese, herbs and tomatoes to "bring home the more traditional lasagna flavor," according to a product development manager at Eagle Foods.[5]

**CONSUMERS DEMAND CLEAN INGREDIENTS AND ARE WILLING TO PAY MORE FOR THEM**

26.    KeHE Distributors®, a distributor of natural & organic, specialty, and fresh products in North America, identified the top seven trends in the food and beverage industry for 2024. KeHE describes one of these as "The Real Deal," explaining "[r]ather than limiting indulgences or foods that can be perceived as less healthy, the consumer mindset is shifting to a search for quality ingredients

---

[3] *Ibid.*
[4] Ahmad, Shanzeh, *Hamburger Helper aims to stay relevant*, THE COLUMBIAN (April 12, 2024, *available at* https://www.columbian.com/news/2024/apr/12/hamburger-helper-aims-to-stay-relevant/.
[5] *Ibid.*

CLASS ACTION COMPLAINT

that include real dairy, real sweeteners, and quality meats and cheeses."[6]

27.    Kerry Group P.L.C., a food company that has conducted many studies on the food market, including consumer trends and perceptions, found that "[c]onsumers are shifting their focus to 'real' ingredients that connote fresh, wholesome, and unprocessed in food and beverages."[7] Kerry's research found that clean labels, including the claim "made with real ingredients' boosted a product's clean position for consumers."[8]

28.    A market researcher at Mintel, a global market research firm, explains the meaning of clean labels and clean ingredients: "The concept of clean label is associated with foods that do not contain ingredients perceived as artificial or are not easily understood by average consumers."[9]

29.    Consumers are increasingly drawn to products advertised as made with one or more clean ingredients, which they perceive as containing real ingredients.

30.    A 2021 study found that in the United States, 63% of adults say the ingredients in a food or beverage have at least a moderate influence on what they buy and 64% say they try to choose foods made with clean ingredients.[10]

31.    Another survey found that 20% of U.S. consumers say they regularly buy foods and beverages, because they are advertised on the label as having clean

---

[6] *KeHE Distributors' 2024 Macro Trends Show Consumers Want Healthier, More Convenient Options*, KeHE (Nov. 16, 2023), *available at* https://www.kehe.com/news-blog/news/kehe-distributors-2024-macro-trends/.

[7] Shoup, Mary Ellen, *Kerry Report, How are consumers' perceptions of clean labels evolving*, FOOD NAVIGATOR USA (Oct. 24, 2019), *available at* https://www.foodnavigator-usa.com/Article/2019/10/24/Kerry-report-How-are-consumers-perceptions-of-clean-label-evolving.

[8] *Consumer awareness of clean label drives demand for ingredient solutions*, BEVERAGE INDUSTRY (June 28, 2022), *available at* https://www.bevindustry.com/articles/95110-consumer-awareness.

[9] Berry, Donna, *'Clean label' now includes processing, packaging, marketing methods*, SUPERMARKET PERIMETER (Sept. 26, 2024), *available at* https://www.supermarketperimeter.com/articles/11788-clean-label-now-includes-processing-packaging-marketing-methods.

[10] Sawnani, Bharat, *Clean Label: Transparency You Can Taste*, FOOD INFOTECH (April 27, 2023), *available at* https://www.foodinfotech.com/clean-label-transparency-you-can-taste/.

CLASS ACTION COMPLAINT

ingredients.[11]

32.    A 2018 survey conducted by LEK, a global strategy consulting firm, found that three out of four consumers say they are committed to at least one health, wellness, ethical or environmental attribute among the foods they eat.[12]

33.    A TrendTracker report from Cargill, an American multinational food corporation, finds consumers increasingly mindful of the food they consume with almost half saying they are interested in clean eating. This is reflected in the growth of the global clean eating market with a Compound Annual Growth Rate of 8.65%, which is expected to reach $32 billion by 2026, according to the Global Clean Label Ingredients Market (2020-2026).[13]

34.    Given the above, it is increasingly recognized that product transparency presents an opportunity for manufacturers and brands to emerge as trusted sources for consumers, which in turn aids the providers in strengthening their image and position in the market.[14]

35.    Further, it is well documented that manufacturers charge and consumers are willing to pay a premium for products with clean ingredients.[15]

---

[11] *Ibid.*
[12] Steingoltz, Maria, *Consumer Health Claims 3.0: The Next Generation of Mindful Food Consumption*, LEK INSIGHTS (Oct. 15,2018), *available at* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.
[13] Fox, Jennifer B., *Baking industry experts discuss clean label*, SUPERMARKET PERIMETER (July 25, 2024), *available at* https://www.supermarketperimeter.com/articles/11516-baking-industry-experts-discuss-clean-label.
[14] *Global Clean Label Ingredients Market Analysis and Forecast, 2020-2022 & 2026: Focus on Ingredients, Applications, and Country-Wise Analysis - ResearchAndMarkets.com*, BUSINESSWIRE (April 6, 2022), *available at* https://www.businesswire.com/news/home/20220406005615/en/Global-Clean-Label .
[15] *The Truth About Clean Label — and Why It Matters*, PERDUE FOOD SERVICE (Oct. 18, 2021), *available at* https://www.perduefoodservice.com/resources/trends-insights/the-truth-about-clean-label-and-why-it-matters/; Jacobsen, Jessica, *Consumer awareness of clean label drives demand for ingredient solutions*, BEVERAGE INDUSTRY, *available at* https://www.bevindustry.com/articles/95110-consumer-awareness-of-clean-label-drives-demand-for-ingredient-solutions; Mastroberte, Tammy, *Consumers Willing to Pay More for 'Clean' Foods & Beverages*, CONVENIENCE STORE NEWS (Jan. 15, 2019), *available at* https://csnews.com/consumers-willing-pay-more-clean-foods-beverages; Bizzozero, Judie, *75% of Consumers Will Pay Extra For Clean Label Ingredients*, SUPPLY SIDE FOOD AND BEVERAGE JOURNAL (March 15, 2027), *available at*

CROSNER LEGAL. P.C.

36.    Enter cheese, studies show that cheese flavors evoke strong emotional responses from consumers with "[t]heir most prominent perceptions rang[ing] from cheese flavours being satisfying and healthy to fresh and indulgent."[16]

37.    Innova, a global leader in market intelligence for the food, beverage, beauty, and personal care sectors, found that 60% of consumers like rewarding themselves with everyday moments of happiness they can experience and that cheese ingredients bring a touch of indulgence, premium quality, and a delightful, feel-good factor to any food.[17]

38.    Innova's research also shows that consumers are concerned with getting their daily nutrition while staying on budget and cheese ingredients add affordable nutrition in the form of protein to easy homemade-style meals.[18]

39.    Real cheese in a diet, for example, provides calcium, a beneficial nutrient that is one of the building blocks of strong bones. In the United States, approximately 72% of calcium intakes come from dairy products and foods with added dairy ingredients.[19]

40.    A typical serving (30 grams) of hard cheeses including cheddar and parmesan cheese supplies approximately 240 milligrams of calcium - 20% of the daily value for this nutrient.[20]

---

https://www.supplysidefbj.com/market-trends-analysis/75-of-consumers-will-pay-extra-for-clean-label-ingredients.
[16]*Revealing      the      Cheese*,    KERRY    GLOBAL    (2022),    *available      at* https://liveshareeast3.seismic.com/i/TWGup27Us5bMBKDCyt31Pqz1H1sz5Cpm6J___nZOm oLCBr5iWixpdjoboWPLUSSIGNlgW9sRiR7WwePyqPLUSSIGNZPsuhbCcwwhK4AsrIPLU SSIGN8GSAV28ZmQGFePXTkgGceX4Z1lI7JPczaDrvA35fC5fcLhiNGS9XtH4s43M48vWJ NLybuN0XjMw2z2QgEQUALSIGN.
[17] *Cheese Market Trends in the US*, INNOVA MARKET INSIGHTS (Feb. 12, 2024), *available at* https://www.innovamarketinsights.com/trends/cheese-market-trends-in-the-us/.
[18] *Ibid*.
[19] *Calcium Fact Sheet for Health Professionals*, NATIONAL INSTITUTES OF HEALTH, OFFICE    OF    DIETARY    SUPPLEMENTS    (July    24,    2024),    *available    at* https://ods.od.nih.gov/factsheets/Calcium-HealthProfessional/.
[20]    *Calcium    Content    of    Common    Foods*,    INTERNATIONAL    OSTEOPOROSIS FOUNDATION,                    *available                    at* https://www.osteoporosis.foundation/patients/prevention/calcium-content-of-common-foods.

CROSNER LEGAL. P.C.

CROSNER LEGAL, P.C.

41.    Cheese is also a significant source of protein, which is essential for the synthesis of collagen and other structural proteins in bones. Protein plays a role in cell structure, immune function, enzyme reactions, and hormone synthesis.[21] Parmesan is a high-protein cheese, with 10.1 grams of protein per ounce. Cheddar cheese offers high-quality protein containing 6.8 grams of protein per ounce.[22]

**DEFENDANT CAPITALIZES ON THIS TREND BY MARKETING THE PRODUCTS AS BEING "MADE WITH REAL CHEESE"**

42.    Recognizing this trend, Defendant markets the Products as being "Made with Real Cheese," where cheese is a characterizing ingredient of each Product.

43.    Specifically, on the front package of each of the Products above a picture of a large bowl of pasta smothered or coated in cheese appears the words "Made with Real Cheese." This message is bolstered by the additional statement "CREAMY and CHEESY SAUCE," which appears on the front package of all but one of the Products, below the "Made with Real Cheese" claim.[23]

44.    Indeed, cheese is a characterizing ingredient for each of the Products where a variation of the word "cheese" is part of the name of each Product.

45.    Placement of these representations on the front of the box for each Product was purposeful and strategic on the part of Defendant.

46.    A 2021 survey by the International Food Information Council ("IFIC"), a nonprofit supported by the food, beverage and agricultural industries, found that while sixty-two percent of consumers review a product's ingredient list, more than half use front-of-pack labeling as a source of information.[24]

---

[21] Bourgeois, Chelsea Rae, RDN, LD, *15 High-Protein Cheeses to Add to Your Diet*, HEALTH (March 12, 2024), *available at* https://www.health.com/high-protein-cheeses-8603571.
[22] *Ibid.*
[23] https://www.hamburgerhelper.com/products/?product_category[]=18.
[24] *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients*, FOOD INSIGHT (June 17, 2021), *available at* https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/.

47.    The front package and ingredients for each Product are below:



**PRODUCT INGREDIENTS**

Enriched Macaroni (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Corn Starch, Salt, Modified Whey, Sugar. Contains 2% or less of: Tomato*, Onion*, Vegetable Oil (canola, soybean, and/or sunflower oil), Citric Acid, Whey, Maltodextrin, Garlic*, Spice, Cheddar Cheese* (cultured milk, salt, enzymes), Color (yellows 5 & 6, yellow lakes 5 & 6, annatto & turmeric extract), Monoglycerides, Yeast Extract, Nonfat Milk*, Gum Arabic, Natural Flavor, Sodium Phosphate, Blue Cheese* (cultured milk, salt, enzymes), Silicon Dioxide (anticaking agent). *DRIED



**PRODUCT INGREDIENTS**

Enriched Macaroni (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Corn Starch, Salt, Enriched Flour (wheat flour, niacin, iron, thiamin mononitrate, riboflavin, folic acid). Contains 2% or less of: Sugar, Vegetable Oil (canola, soybean, and/or sunflower oil), Citric Acid, Onion, Whey, Maltodextrin, Color (yellow lakes 5 & 6, yellows 5 & 6, annatto & turmeric extract), Cheddar Cheese (cultured milk, salt, enzymes), Lactic Acid, Monoglycerides, Garlic, Calcium Lactate, Nonfat Milk, Yeast Extract, Sodium Phosphate, Blue Cheese (cultured milk, salt, enzymes), Natural Flavor, Gum Arabic, Silicon Dioxide (anticaking agent). DRIED

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="writing-mode: vertical">CROSNER LEGAL. P.C.</div>



**PRODUCT INGREDIENTS**

Enriched Macaroni (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Dairy Solids, Corn Starch, Wheat Flour, Salt. Contains 2% or less of: Vegetable Oil (canola, soybean and/or sunflower oil), Lactic Acid, Citric Acid, Tomato*, Calcium Lactate, Whey*, Bacon Fat, Coconut Oil, Natural Flavor, Annatto Extract (color), Cheddar Cheese* (milk, cultures, salt, enzymes), Monoglycerides, Bacon (pork cured with water, salt, sugar, sodium phosphate, sodium ascorbate, sodium nitrite, and natural smoke flavor), Buttermilk*, Modified Corn Starch, Lactose, Hydrolyzed Corn, Soy & Wheat Protein, Yeast Extract, Sugar, Acetic Acid, Cream*, Blue Cheese* (milk, cultures, salt, enzymes), Sodium Phosphate, Disodium Inosinate, Enzyme Modified Cheddar Cheese* (milk, cultures, salt, enzymes), Silicon Dioxide (anticaking agent). *Dried



**PRODUCT INGREDIENTS**

Enriched Pasta (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Corn Starch, Salt. Contains 2% or less of: Maltodextrin, Modified Whey, Vegetable Oil (canola, soybean, and/or sunflower oil), Hydrolyzed Corn, Soy, and Wheat Protein , Natural And Artificial Flavor, Monosodium Glutamate, Sugar, Monoglycerides, Citric Acid, Whey, Buttermilk, Color (caramel color, yellow lakes 5 & 6, yellows 5 & 6), Spice, Cheddar Cheese* (milk, cultures, salt, enzymes), Onion*, Modified Corn Starch, Coconut Oil, Sodium Phosphate, Safflower Oil, Blue Cheese* (milk, salt, cultures, enzymes), Yeast Extract, Parmesan Cheese, Enzyme Modified Blue Cheese (milk, cultures, salt, enzymes), Enzyme Modified Cheddar Cheese (milk, cultures, salt, enzymes), Silicon Dioxide (anticaking agent). *DRIED

11

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**PRODUCT INGREDIENTS**

Enriched Pasta (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Corn Starch, Maltodextrin, Salt, Modified Whey. Contains 2% or less of: Buttermilk, Sugar, Sea Salt (potassium magnesium chloride, salt), Monosodium Glutamate, Monoglycerides, Modified Corn Starch, Citric Acid, Vegetable Oil (canola, soybean, and/or sunflower oil), Lactic Acid, Natural Flavor, Parsley*, Calcium Lactate, Vinegar*, Whey, Cheddar Cheese* (milk, salt, cultures, enzymes), Spice, Yeast Extract, Color (yellow lakes 5 & 6, yellows 5 & 6, red 40 lake), Coconut Oil, Potassium Chloride, Palm Oil* (palm oil, lactose, sodium caseinate, potassium phosphate), Blue Cheese* (milk, salt, cultures, enzymes), Parmesan Cheese* (milk, cultures, salt, enzymes), Sodium Phosphate, Enzyme Modified Blue Cheese (milk, cultures, salt, enzymes), Nonfat Milk*, Enzyme Modified Cheddar Cheese (milk, cultures, salt, enzymes), Silicon Dioxide (anticaking agent). *DRIED

**PRODUCT INGREDIENTS**

Enriched Pasta (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Corn Starch, Modified Whey, Salt. Contains 2% or less of: Sugar, Onion*, Vegetable Oil (canola, soybean, and/or sunflower oil), Color (annatto & turmeric extract, caramel color), Garlic*, Whey, Lactic Acid, Calcium Lactate, Cheddar Cheese* (cultured milk, salt, enzymes), Maltodextrin, Monoglycerides, Spice, Nonfat Milk*, Yeast Extract, Sodium Phosphate, Blue Cheese* (cultured milk, salt, enzymes), Natural Flavor, Silicon Dioxide (anticaking agent). *DRIED



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## PRODUCT INGREDIENTS

Enriched Macaroni (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Dairy Solids, Corn Starch, Salt, Enriched Flour (wheat flour, niacin, iron, thiamin mononitrate, riboflavin, folic acid). Contains 2% or less of: Vegetable Oil (canola, soybean, and/or sunflower oil), Lactic Acid, Whey, Calcium Lactate, Maltodextrin, Cheddar Cheese* (cultured milk, salt, enzymes), Color (annatto & turmeric extract), Palm Oil (palm oil, lactose, sodium caseinate, potassium phosphate), Nonfat Milk, Monoglycerides, Parmesan Cheese (milk, cultures, salt, enzymes), Sodium Phosphate, Blue Cheese (cultured milk, salt, enzymes), Natural Flavor, Yeast Extract, Silicon Dioxide (anticaking agent). DRIED



## PRODUCT INGREDIENTS

Enriched Pasta (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Dairy Solids*, Sugar, Salt, Corn Starch, Salt, Tomato*. Contains 2% or less of: Sea Salt (potassium magnesium chloride, salt), Wheat Flour, Onion*, Garlic*, Citric Acid, Spice, Vegetable Oil (canola, soybean, and/or sunflower oil), Basil, Monoglycerides, Oregano, Malic Acid, Annatto Extract (color), Yeast Extract, Cheddar Cheese* (milk, salt, cultures, enzymes), Whey, Buttermilk, Coconut Oil, Natural Flavor, Palm Oil* (palm oil, lactose, sodium caseinate, potassium phosphate), Sodium Phosphate, Blue Cheese* (milk, salt, cultures, enzymes), Parmesan Cheese* (milk, cultures, salt, enzymes), Maltodextrin, Nonfat Milk*, Silicon Dioxide (anticaking agent). *DRIED

CLASS ACTION COMPLAINT



**PRODUCT INGREDIENTS**

Enriched Pasta (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Corn Starch, Wheat Flour, Salt, Modified Whey. Contains 2% or less of: Yeast Extract, Vegetable Oil (canola, soybean, and/or sunflower oil), Cheddar Cheese* (milk, salt, cultures, enzymes), Whey, Buttermilk, Lactic Acid, Citric Acid, Parsley*, Coconut Oil, Calcium Lactate, Annatto Extract (color), Monoglycerides, Natural Flavor, Sodium Phosphate, Blue Cheese* (milk, salt, cultures, enzymes), Silicon Dioxide (anticaking agent). *DRIED

48.    Other products make the same "Made with Real Cheese" claim above a picture of a large bowl of creamy pasta, without the statement "CREAMY and CHEESY SAUCE."



**PRODUCT INGREDIENTS**

Enriched Pasta (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Corn Starch, Salt, Sugar, Wheat Flour. Contains 2% or less of: Sea Salt (potassium magnesium chloride, salt), Tomato*, Paprika, Mozzarella Cheese* (milk, cultures, salt, enzymes), Onion*, Basil, Vegetable Oil (canola, soybean, and/or sunflower oil), Spice, Lactic Acid, Fennel Seed, Oregano, Garlic*, Yeast Extract, Calcium Lactate, Cheddar Cheese* (milk, salt, cultures, enzymes), Whey, Annatto Extract (color), Buttermilk, Palm Oil* (palm oil, lactose, sodium caseinate, potassium phosphate), Malic Acid, Coconut Oil, Monoglycerides, Sodium Phosphate, Parmesan Cheese* (milk, cultures, salt, enzymes), Natural Flavor, Blue Cheese* (milk, salt, cultures, enzymes), Nonfat Milk*, Silicon Dioxide (anticaking agent). *DRIED

CROSNER LEGAL, P.C.

1    49.    Defendant's claim that the Products are "Made with Real Cheese,"

2  adds value to the Products.

3    50.    For instance, the FDA recognizes that similar claims such as "made

4  with real butter," "made with whole fruit," "contains honey" are claims about the

5  presence of an ingredient that may be perceived to add value to the product. 21

6  CFR § 101.65(b)(3).

7  **DEFENDANT'S "REAL" INGREDIENT CLAIM IS MISLEADING**

8    51.    Research shows that consumers initially rely on extrinsic cues such

9  as visual information on labels and packaging to evaluate products, developing

10  sensory expectations about its ingredients.[25]

11    52.    A 2023 systematic review evaluating the effectiveness of Front-of-

12  Pack Labeling ("FOPL") found that people of all socioeconomic status groups

13  "were aware of and more likely to pay attention towards FOPL than the nutrition

14  information panel provided on the back of the package" and suggested that

15  "FOPLs are more visible than the nutrition information panel and may guide

16  healthier food choices for people of all SES backgrounds."[26]

17    53.    Whether the Products contain more than a *de minimis* amount of

18  cheese, a characterizing ingredient of the Products, is basic front label information

19  consumers rely on when making quick purchasing decisions at the grocery store.

20    54.    A characterizing ingredient is one which has a material bearing on

21  price or consumer acceptance of the food, or which a consumer might otherwise

22

23  [25] Pramudya, Ragita C., *Hand-Feel Touch Cues and Their Influences on Consumer Perception and Behavior with Respect to Food Products: A Review*, FOODS (July 15, 2019), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC6678767/; Enax, Laura, *et al.*, *Food packaging cues*

24  *influence taste perception and increase effort provision for a recommended snack product in*

25  *children*, FRONTIERS IN PSYCHOLOGY (July 2, 2015), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC4488606/; Watson, Elaine, *What 'clean' food cues*

26  *are shoppers looking for?*, FOOD NAVIGATOR USA (Nov. 21, 2017), *available at* https://www.foodnavigator-usa.com/Article/2017/11/21/Consumers-look-for-cues-for-natural-and-clean-food-says-Hartman-Group-at-FOOD-VISION-USA/.

27  [26] Shrestha, Anita, *et al.*, *Impact of front-of-pack nutrition labelling in consumer understanding*

28  *and use across socio-economic status: A systematic review*, APPETITE (August 1, 2023), available at https://www.sciencedirect.com/science/article/pii/S019566632300140X.

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

believe to be present in an amount greater than is the case. 21 CFR §§ 101.22(i), 102.5.

55.    The Product's common or usual names all of which include a variation of the word "cheese," in combination with representations on the front of the Product boxes that they are "Made with Real Cheese" placed above a large bowl of cheesy pasta is false, misleading, and deceptive to reasonable consumers because the Products consist of two percent or less of cheese, a *de minimis* amount.

56.    Despite emphasizing that the Products are "Made with Real Cheese," and with more than a *de minimis* amount of real cheese, the fine print of the ingredients on the back of the Product packages reveal that the Products consist of two percent or less of cheese.

57.    The FDA requires ingredients identified on food labels to be listed in descending order of predominance by weight. 21 CFR § 101.4(a)(1). The ingredient that weighs the most is to be listed first, and the ingredient that weighs the least is listed last.

58.    Ingredients that comprise 2 percent or less of a product formula are exempt from the above. These ingredients do not need to be listed in descending order by predominance of weight but rather can be listed in any order.

59.    These ingredients must be listed at the end of the ingredient statement following an appropriate quantifying statement such as "Contains __ percent or less of _____." 21 CFR § 101.4(a)(2). Further, they must not "be present in an amount greater than the stated threshold." 21 CFR § 101.4(a)(2). As is relevant here, Product labels must state "Contains 2 percent or less of cheese" and thus may not contain more than 2 percent cheese.

60.    Further, since the FDA does not require ingredients that make up two percent or less of a product to be listed in order of predominance, the amount of cheese in the Products may be significantly less than two percent.  21 CFR § 101.4(a)(2).

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

61.    The primary ingredient in all the Products is enriched pasta (macaroni, pasta, spaghetti) made of wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, and folic acid.

62.    The remaining ingredients in order of predominance by weight are not cheese. Neither corn starch, salt, enriched flour, wheat flour, sugar, tomato, or maltodextrin (a carbohydrate made from corn, rice, potato starch, or wheat) are cheese.

63.    Dairy Solids, also known as Modified Whey or Whey Permeate (referred to herein as "Whey Permeate"), is not cheese or a component of real cheese,[27] which is defined as "the coagulated, compressed, and usually ripened curd of milk separated from the whey."[28]  Rather, it is the by-product of cheese manufacturing.[29]

64.    Whey permeate is a by-product obtained when cheese whey is passed through an ultrafiltration membrane to concentrate whey protein. Whey proteins are retained by the membrane, whereas smaller molecules such as lactose and salts pass through the membrane making up the whey permeate.[30]

65.    Once moisture is removed from the liquid permeate, an off-white, free-flowing powder with a mild dairy flavor remains. After the protein (plus some lactose and minerals) is removed from this powder, the remaining collection of substances is called whey permeate. The composition of whey permeate varies by milk source, cheese type, and processing conditions, but its main ingredient is lactose,[31] the sugary component of milk.

---

[27] https://www.thinkusadairy.org/products/permeate-(dairy-product-solids)/permeate-categories/whey-permeate#.
[28] https://www.merriam-webster.com/dictionary/cheese.
[29] https://www.adpi.org/ingredient-resource-center/dairy-milk-permeate/.
[30] Barile, Daniela, *et al*., *Permeate from cheese whey ultrafiltration is a source of milk oligosaccharides,* INTERNATIONAL DAIRY JOURNAL (Sept. 1, 2010), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC2805004/#:~:text=Whey.
[31] Foegeding, E.A., *Milk Protein Products | Whey Protein Products*, ENCYCLOPEDIA OF DAIRY SCIENCES (2nd Ed.) (2011), *available at* https://www.sciencedirect.com/topics/food-science/whey-permeate#:~:text=.

17

CLASS ACTION COMPLAINT

66.    Whey permeate is used as a lower cost filler ingredient and bulking agent, which adds volume, compared to costlier cheese.[32] It is not cheese.

### REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS

67.    Marketing the Products as "Made with Real Cheese" is misleading to consumers because the Products contain a negligible amount, two percent or less, of cheese.

68.    Reasonable consumers viewing the label, which states "Made with Real Cheese" directly above a bowl filled with creamy cheesy pasta and next to the words "Creamy & Cheesy Sauce," expect the Products, all of which include the word cheese in their names, to contain more than a negligible amount of cheese.

69.    Indeed, cheese is a characterizing ingredient of the Products, all of which include a variation of the word cheese in their name (e.g., Cheeseburger, Cheesy, Cheese).

70.    The Products' labels fail to prominently and conspicuously reveal facts relative to the proportions or absence of real cheese in the Products.

### PLAINTIFF AND PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY

71.    Plaintiff and putative Class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative Class members spent money that, absent Defendant's actions, they would not have spent.

72.    Plaintiff and Class members would not have purchased or would have paid less for the Products if they knew they contained two percent or less of real

---

[32] Lappa, Iliada K., *et al.*, *Cheese Whey Processing: Integrated Biorefinery Concepts and Emerging Food Applications*, FOODS (Aug. 15, 2019), *available at* https://www.mdpi.com/2304-8158/8/8/347; Choudhury, Nandini R., *Whey Permeate Market Outlook (2024 to 2034)*, FUTURE MARKET INSIGHTS, INC. (August 2024), *available at* https://www.futuremarketinsights.com/reports/whey-permeate-market; Momtaz, Mysha, *et al.*, *Mechanisms and Health Aspects of Food Adulteration: A Comprehensive Review*, FOODS (Jan. 2, 2023), *available at* https://www.mdpi.com/2304-8158/12/1/199.

CROSNER LEGAL, P.C.

cheese.

73.    The Products were worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

74.    Similar Products were available for purchase that cost less.   By way of example, a 6.6 ounce box (4.5 servings) of Hamburger Helper Cheeseburger Macaroni with the claim "Made with Real Cheese" sells online at Walmart for $1.84, excluding tax and sales.[33] Compare this to the Great Value Cheeseburger Pasta Skillet Dinner, 5.8 ounces, which is sold online at Walmart for $1.28, excluding tax and sales. As seen below, the front package of this comparative product, sold at a lower price, does not claim to reference that it is made with real cheese.[34]



[33] https://www.walmart.com/ip/Hamburger-Helper-Pasta-Cheeseburger-Macaroni-6-6-Ounces-Box/5078997439 (last visited Dec. 2, 2024).
[34]https://www.walmart.com/ip/Great-Value-Cheeseburger-Pasta-Skillet-Dinner-5-8-oz/169880328?wl13=5075&selectedSellerId=0&wmlspartner=wlpa (last visited Dec. 2, 2024).

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

75.    Plaintiff would like to, and would, purchase the Products again if they are accurately represented on the front package by excluding the term "Made with Real Cheese," with a corresponding price reduction to account for any premium associated with this claim. However, as a result of Defendant's ongoing misrepresentations and omissions, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase such Products.

76.    Accordingly, Plaintiff brings this action individually and on behalf of other similarly situated consumers to halt the dissemination of Defendant's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products.

77.    As a consequence of Defendant's deceptive labeling and material omissions, Plaintiff alleges Defendant has violated and is violating California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. (the "CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (the "UCL") and has breached express warranties.

### NO ADEQUATE REMEDY AT LAW

78.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the Complaint will be barred from recovery if equitable relief were not permitted under the UCL.

79.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiff and Class members may also be

entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

80.    A primary litigation objective in this litigation is to obtain injunctive relief in the form of a label or ingredient change. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products as being "Made with Real Cheese," a characterizing ingredient of the Products, despite that the Products contain two percent or less of real cheese.

81.    Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

## CLASS ACTION ALLEGATIONS

82.    Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated as defined below ("Nationwide Class"):

> All residents of the United States who purchased one or more of the Products from Defendant for personal, household or family use, within the applicable statute of limitations, until the date class notice is disseminated.

83.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated Californians, defined as ("California Subclass"):

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

> All persons who purchased one or more of the Products in California, for personal, household or family use, within the applicable statute of limitations, until the date class notice is disseminated.

84.     The "Nationwide Class" and "California Subclass" are referred to together as the "Class." Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

85.     Plaintiff reserves the right to amend or otherwise alter the Class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

86.     Certification of the Class is appropriate because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

87.     <u>Numerosity</u>: Class members are so numerous that joinder of all members is impracticable. Plaintiff believes there are thousands of consumers who are Class members described above who have been damaged by Defendant's deceptive and misleading practices. For instance, public data reveals that in 2022 Hamburger Helper generated $248.6 million in U.S. sales, and in 2023 sales hit $272.2 million, reaching a 20% market share.[35]

88.     <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class members. The questions of law and fact common to the Class members which predominate over any questions that may affect individual Class members include, but are not limited to:

---

[35] *See*, *supra*, fn 4.

a.      Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.      Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.      Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.      Whether the representation that the Products are "Made with Real Cheese" is false or misleading;

e.      Whether the representation that the Products are made with more than a *de minimis* amount of real cheese is false or misleading;

f.      Whether Plaintiff and the Class are entitled to injunctive relief;

g.      Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class members.

89.    Typicality: Plaintiff is a member of the Class she seeks to represent. Plaintiff's claims are typical of the claims of each Class member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class members.

90.    Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class members she seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the Class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief

appropriate with respect to Plaintiff and the Class members. The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications.

91.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.    Class members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action.

92.    Final Declaratory or Injunctive Relief: Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

93.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

94.    Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code §§ 1750, *et seq.***

***(On Behalf of the California Subclass)***

95.    Plaintiff realleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

96.    Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

97.    At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

98.    At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

99.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California

25

1  Civil Code section 1761(a).

2      100.  Purchases of the Products by Plaintiff and Class members were and

3  are "transactions" within the meaning of California Civil Code section 1761(e).

4      101.  Defendant disseminated, or caused to be disseminated, through its

5  advertising, false and misleading representations. Defendant's representations that

6  the Products are "Made with Real Cheese," which statement appears on the front

7  of the box of each Product, above a picture of a large bowl of cheesy pasta and

8  next to the words "Creamy Cheese Sauce," combined with the name of the

9  Products, all of which contain a variation of the word "cheese," is meant to and

10 does convey the impression that cheese is a characterizing ingredient in the

11 Products, and is present in more than a *de minimis* amount. This is false and

12 misleading because the Products contain two percent or less of cheese.

13     102.  This is a material misrepresentation and omission as a reasonable

14 consumer would find the fact that the Products contain two percent or less real

15 cheese to be important to their decision in purchasing the Products. Defendant's

16 representations violate the CLRA in the following ways:

17         (a) Defendant represented that the Products have characteristics,

18             ingredients, uses, and benefits which they do not have (Cal. Civ.

19             Code § 1770(a)(5));

20         (b) Defendant represented that the Products are of a particular

21             standard, quality, or grade, which they are not (Cal. Civ. Code §

22             1770(a)(7));

23         (c) Defendant advertised the Products with an intent not to sell the

24             Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

25         (d) Defendant represented that the subject of a transaction has been

26             supplied in accordance with a previous representation when it has

27             not (Cal. Civ. Code § 1770(a)(16)).

28

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

103.   Defendant violated the CLRA because all the Products, which include a variation of the word cheese in their names, were prominently advertised as containing more than a *de minimis* amount of cheese. The words "Made with Real Cheese" appears on the front of each Product box, which message was reinforced by a picture of large bowl of cheesy pasta, next to the words "Creamy & Cheesy Sauce." This was false and misleading because the Products contain a *de minimis* amount of cheese, two percent or less. Defendants knew or should have known that its representations on the front of the box would mislead reasonable consumers.

104.   Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

105.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

106.   Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

107.   Pursuant to California Civil Code section 1782, on or about December 10, 2024, Plaintiff notified Defendant, in writing, by certified mail, of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. Defendant has not rectified or agreed to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA. Thus, Plaintiff seeks actual damages, injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

CROSNER LEGAL, P.C.

1    108.   Pursuant to section 1780(d) of the CLRA, below is an affidavit

2    showing this action was commenced in a proper forum.

3                        **SECOND CLAIM FOR RELIEF**

4       **Violation of California's Unfair Competition Law ("UCL")**

5            **Cal. Bus. & Prof. Code §§ 17200, *et seq.***

6               ***(On Behalf of the California Subclass)***

7    109.   Plaintiff realleges and incorporates by reference all allegations

8    contained in this Complaint, as though fully set forth herein.

9    110.   Plaintiff brings this claim under the UCL individually and on behalf

10   of the Class against Defendant.

11   111.   The UCL prohibits any "unlawful," "fraudulent," or "unfair" business

12   act or practice and any false or misleading advertising.

13   112.   Defendant committed unlawful business acts or practices by making

14   the representations and omitting material facts (which constitutes advertising

15   within the meaning of Cal. Bus. & Prof. Code, § 17200), as set forth more fully

16   herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ.

17   Code §§17500, *et seq*., California's False Advertising Law, Cal. Bus. & Prof. §§

18   17500, *et seq*., 15 U.S.C. § 45, and by breaching express warranties. Plaintiff,

19   individually and on behalf of the other Class members, reserves the right to allege

20   other violations of law, which constitute other unlawful business acts or practices.

21   Such conduct is ongoing and continues to this date.

22   113.   Defendant committed "unfair" business acts or practices by: (1)

23   engaging in conduct where the utility of such conduct is outweighed by the harm

24   to Plaintiff and the members of the Class; (2) engaging in conduct that is immoral,

25   unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the

26   members of the Class; and (3) engaging in conduct that undermines or violates the

27   intent of the consumer protection laws alleged herein. There is no societal benefit

28   from deceptive advertising. Plaintiff and the other Class members paid for a

CROSNER LEGAL, P.C.

28

Product that is not as advertised by Defendant. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

114.   Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products contain more than a *de minimis*, two percent, of real cheese.

115.   Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

116.   Defendant's wrongful business practices and violations of the UCL are ongoing.

117.   Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

118.   Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code § 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all

CROSNER LEGAL, P.C.

money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

<div align="center">

**THIRD CLAIM FOR RELIEF**

**Breach of Express Warranty Under California Law**

**Cal. Comm. Code § 2313**

***(On Behalf of the Nationwide Class and California Subclass)***

</div>

119.   Plaintiff realleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

120.   Plaintiff brings this claim for breach of express warranty individually and on behalf of the Nationwide Class against Defendant.

121.   As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase, on the front of the box of all the Products, that the Products are made "Made with Real Cheese." Specifically, that the Products are made with more than a *de minimis* amount of real cheese. This message is reinforced by the names of the Products, all of which identify cheese as a characterizing ingredient of the Product, as well as the picture of a large bowl of cheesy pasta on the front of the box. This is an express warranty the Products are made with more than a *de minimis* amount of real cheese.

122.   Plaintiff and the Class reasonably relied on Defendant's above misrepresentations, descriptions and specifications regarding the Products.

123.   Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and members of the Class.

<div align="left">CROSNER LEGAL, P.C.</div>

<div align="center">CLASS ACTION COMPLAINT</div>

124.   In fact, the Products do not conform to Defendant's representations because the Products contain a *de minimis* amount, two percent or less, of cheese. By falsely representing the Products in this way, Defendant breached express warranties.

125.   Plaintiff relied on Defendant's (the manufacturer's) representations on the Products' labels and advertising materials which provide the basis for an express warranty.

126.   As a direct and proximate result of Defendant's breach, Plaintiff and members of the Class were injured because they: (1) paid money for the  Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products was truthful.

127.   Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class members would not have purchased the Products or would not have paid as much as they did for them.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this Complaint, as follows:

a.     Declaring this action is a proper class action, certifying each Class as requested herein, designating Plaintiff as the Class Representative and appointing undersigned counsel as Class Counsel;

b.     Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.     Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein,

and ordering Defendant to engage in a corrective advertising campaign;

      d.     Ordering damages in an amount which is different than that calculated for restitution for Plaintiff and each Class;

      e.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of each Class;

      f.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

      g.     Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: February 21, 2025        CROSNER LEGAL, P.C.

                                By:     *Jennifer L. MacPherson*

                                    JENNNIFER L. MACPHERSON

                               Jennifer L. MacPherson (SBN 202021)
*jmacpherson@crosnerlegal.com*
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff and the Proposed Class*

1

<u>Civil Code Section 1780(d) Affidavit</u>

I am an attorney duly licensed to practice before all courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and is doing, business in California, including in this District. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed February 21, 2025 at San Diego, California.

By:  *Jennifer L. MacPherson*

JENNNIFER L. MACPHERSON

CROSNER LEGAL. P.C.

CLASS ACTION COMPLAINT