1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEYONNA DANIELS,                          No.  2:25-cv-00616-SCR

12              Plaintiffs,

13        v.                                    ORDER

14   EAGLE FAMILY FOODS GROUP, LLC,

15              Defendant.

16

17        The parties have consented to the jurisdiction of a United States Magistrate Judge for all

18   further proceedings pursuant to 28 U.S.C. § 636(c)(1).  ECF No. 17.  Before the Court is

19   Defendant's Motion to Dismiss (ECF No. 12), which seeks dismissal of the action pursuant to

20   Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b).  The motion has been fully briefed

21   (ECF Nos. 18, 21) and the Court heard oral argument on June 5, 2025.  The Court will now grant

22   the motion to dismiss and dismiss the Complaint without leave to amend.

23        **I.    Background and Procedural History**

24        Plaintiff filed this action on February 21, 2025, as a putative class action.  ECF No. 1.

25   Plaintiff brings this action individually and on behalf of all others similarly situated against Eagle

26   Family Foods ("Eagle Foods"), which manufactures, labels, markets, and sells "dry dinner mixes,

27   Hamburger Helper and Tuna Helper" across the United States.  *Id.* at ¶ 1.  Plaintiff alleges

28   Hamburger Helper and Tuna Helper (collectively the "Product") make representations on their

1   packaging meant to give the impression they are made with more than a de minimis amount of

2   real cheese.  *Id*. at ¶ 6.  Plaintiff contends the Product packaging makes cheese "a characterizing

3   ingredient in each Product when, in reality, the Product contains a *de minimus* amount of cheese,

4   less than 2%."  *Id.* at ¶¶ 7-8.

5          Plaintiff alleges she is a resident of Sacramento and has "purchased Hamburger Helper

6   products, including the Cheeseburger Macaroni product, numerous times during the class period."

7   *Id*. at 15.  Plaintiff alleges she read and relied on the Product packaging, including the "Made

8   with Real Cheese" phrase and picture of a "large bowl of cheesy pasta."  *Id.* at 16.  Plaintiff

9   claims she paid more for the Product than she would have had she known of the false and

10  misleading representation and thus suffered an injury in fact.  *Id.* at ¶¶ 17-18.  The complaint

11  contains three counts: 1) violation of California's Consumers Legal Remedies Act ("CLRA"),

12  Cal. Civ. Code §§ 1750 et seq.; 2) violation of California's Unfair Competition Law ("UCL"),

13  Cal. Bus. & Prof. Code §§ 17200, et seq.; and 3) Breach of Express Warranty under California

14  Commercial Code § 2313.  *Id.* at ¶¶ 95-127.

15         On April 21, 2025, Defendant filed a motion to dismiss.  ECF No. 12.  Defendant

16  advances three primary arguments: 1) Plaintiff lacks standing as she has not suffered an injury in

17  fact; 2) Plaintiff's claims are preempted by FDA regulations on labelling requirements; and 3)

18  Plaintiff fails to state a claim.  ECF No. 12 at 2.  Plaintiff filed an opposition brief, and Defendant

19  a reply.  ECF Nos. 18, 21.  The motion was heard on June 5, 2025.

20  **II.    Legal Standards**

21         **A.  Motion to Dismiss under Rule 12(b)(1)**

22         A motion under Rule 12(b)(1) challenges the court's subject-matter jurisdiction over the

23  action. Such jurisdictional challenge can be either facial or factual.  *Safe Air for Everyone v.*

24  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the

25  allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.

26  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

27  themselves, would otherwise invoke federal jurisdiction."  *Id*.  In resolving a factual attack on

28  jurisdiction, the court may review evidence beyond the complaint without converting the motion

to dismiss into a motion for summary judgment.  *Id.*  If a facial challenge is made, the court presumes the truth of a plaintiff's allegations and draws all reasonable inferences therefrom. *Williams v. A&M Bros, LLC*, 2023 WL 4747481 (E.D. Cal. July 25, 2023) (citation and quotation omitted).

### B.  Motion to Dismiss under Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true all well-pleaded factual allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *See Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *See Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

1    **C.  Rule 9(b)**

2    Claims of fraud must be pled with particularity pursuant to Federal Rule of Civil Procedure

3    9(b).  Rule 9(b)'s particularity requirement applies to state law causes of action.  *See Vess v. Ciba-*

4    *Geigy Corp.*, 307 F.3d 1097, 1103 (9th Cir. 2003).  This is true even where the Court's jurisdiction

5    is based on diversity.  *Id.*  Even where fraud is not a necessary element of a claim, if the claim is

6    "grounded in fraud" or "sound[s] in fraud," the "pleading of the claim as a whole must satisfy the

7    particularity requirement of Rule 9(b)."  *Id.* at 1103-04.

8    **III.    Analysis**

9    **A.  Standing**

10    Defendant argues that Plaintiff lacks individual standing for injunctive relief because there

11    is no showing of a real or immediate threat that Plaintiff will be wronged.  ECF No. 12 at 14.

12    Defendant also argues that the injunctive relief Plaintiff may seek, such as being able to buy the

13    product at a lower price, or an ingredient change, is not plausible as the Court cannot set prices or

14    order a change of ingredients.  Defendant concludes: "And so, if Plaintiff is willing to buy the

15    Product again, but not at the existing price or with the existing ingredients, the Court is unable to

16    offer an injunctive relief."  *Id.* at 15-16.

17    Plaintiff contends she "has Article III standing to pursue claims for injunctive relief where

18    she expressly alleges a concrete injury and that she would buy the Products again if she can rely on

19    Defendant's representations, but that she does not know (and may never) how much cheese is in

20    the Products."  ECF No. 18 at 7.  In effect, the injunction Plaintiff requests would require Eagle

21    Foods to remove the "Made with Real Cheese" label, and offer a corresponding price reduction.

22    ECF No. 18 at 10.

23    However, the Court need not decide whether Plaintiff has standing to pursue prospective

24    injunctive relief because—at a minimum—she has standing to pursue damages (and possibly the

25    equitable relief of disgorgement) based on past economic harm.  "To establish standing to bring a

26    claim under these statutes [UCL and CLRA], plaintiffs must meet an economic injury-in-fact

27    requirement, which demands no more than the corresponding requirement under Article III of the

28    U.S. Constitution."  *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).  "In a false

advertising case, plaintiffs meet this requirement if they show that, by relying on a misrepresentation on a product label, they 'paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so.'" *Id.* (internal citation omitted); *see also Kwikset Corp. v. Superior Court*, 246 P.3d 877, 881 (Cal. 2011) ("[P]laintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue."). Plaintiff makes this allegation at Paragraph 17 of the Complaint. Defendant's standing argument is rejected.

### B. Whether Plaintiff States a Claim

The Court first analyzes whether Plaintiff states a claim under California's Consumers Legal Remedies Act and Unfair Competition Law, which involve substantially identical legal standards, before analyzing whether Plaintiff states a claim for breach of an express warranty. Because the Court finds that Plaintiff fails to state a claim on which relief can be granted under each cause of action, the Court need not address Defendant's alternative argument that federal food labeling laws and regulations preempt Plaintiff's claims. The Court also need not decide whether a Plaintiff suing over allegedly misleading packaging must, as Defendant contends, satisfy Rule 9(b)'s heightened pleading standard.

### 1. Consumers Legal Remedies Act and Unfair Competition Law Claims

"California's UCL, FAL, and CLRA require basic fairness in advertising and permit a civil remedy against those who deceive consumers." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024). To prevail on a claim under the CLRA or UCL, "the plaintiff must show that reasonable consumers are likely to be deceived by the label." *Garza v. Spectrum Brands Pet, LLC*, 760 F.Supp.3d 1039, 1047 (E.D. Cal. 2024), citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The reasonable consumer test requires the plaintiff to show that members of the public are likely to be deceived."[1] *Garza*, 760 F.Supp.3d at 1047 (internal citation and quotation

---

[1] California's consumer protection laws "prohibit not only advertising which is false, but also advertising which, *although true*, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938 (quotation marks, alteration marks, and citations omitted) (emphasis added).

1   omitted).  This standard "requires more than a mere possibility that a label might conceivably be

2   misunderstood by some few consumers viewing it in an unreasonable manner."  *Ebner v. Fresh,*

3   *Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (internal quotations and citations omitted).  "Rather, the

4   reasonable consumer standard requires a probability that a significant portion of the general

5   consuming public or of targeted consumers, acting reasonably in the circumstances, could be

6   misled."  *Id.* (internal quotations and citations omitted).  "Stated another way, a complaint asserting

7   a violation of these laws must allege that the packaging will deceive many consumers, not just that

8   a few might be deceived."  *Whiteside*, 108 F.4th at 778.

9       "Whether a reasonable consumer would be deceived by a product label is generally a

10  question of fact not amenable to determination on a motion to dismiss."  *Fitzhenry-Russell v. Coca-*

11  *Cola*, 2017 WL 4680073, *3 (N.D. Cal. Oct. 18, 2017) (citation omitted).  "However, the court

12  may determine, as a matter of law that the alleged violations of the CLRA, UCL, and [False

13  Advertising Law] are simply not plausible."  *Garza*, 760 F.Supp.3d at 1047, citing *Chong v. Nestle*

14  *Water N. Am., Inc*., No. 20-56373, 2021 WL 4938128, at *1 (9th Cir. 2021) ("[T]his Court may

15  conclude on the pleadings that no reasonable consumer would be misled by any of the product

16  labels at issue in this suit.").

17      Within the Ninth Circuit, evaluation of "packaging for consumer deception claims at the

18  pleading stage[,]" begins with the front label, as consumers are not expected to look beyond

19  unambiguously misleading representations on the front label to determine the truth from the rest of

20  the packaging.  *Garza*, 760 F.Supp.3d 1039, 1048, citing *Whiteside*, 108 F.4th at 778-82.  If the

21  front label is unambiguously deceptive, then the court will not consider the back label at the

22  pleading stage.  *See McGinity v. Procter & Gamble Co*., 69 F.4th 1093, 1098 (9th Cir. 2023) (the

23  front label must be unambiguously deceptive for a defendant to be precluded from insisting that the

24  back label be considered with the front label at the pleading stage).  However, if the front label is

25  ambiguous as to the representation at issue, the Court may then turn to the back label to determine

26  whether the product is making a deceptive claim.  "[A] front label is ambiguous when reasonable

27  consumers would necessarily require more information before reasonably concluding that the label

28  is making a particular representation."  *Whiteside*, 108 F.4th at 781.

1      The Complaint contains images of the Product labels at issue, as well as the Product

2  ingredient labels from the back of the box.  ECF No. 1 at ¶¶ 47-48.  Plaintiff contends she purchased

3  the Hamburger Helper Cheeseburger Macaroni package.  *Id.* at ¶16.  That product is described in

4  the lower-left-hand corner of the box as a "pasta & cheese sauce mix with other natural flavors."

5  *Id.* at ¶ 47.[2]  The front of the box also states "Made with Real Cheese" and "creamy & cheesy

6  sauce."  The product ingredient list on the back of the box states that the product contains 2% or

7  less of "cheddar cheese."  Plaintiff has not alleged precisely how much cheese the Product actually

8  contains.

9      The Complaint also makes certain allegations about the health value to consumers of

10  "clean" ingredients like real cheese.  ECF No. 1 at ¶¶ 26-41.  Plaintiff alleges that consumers "are

11  increasingly drawn to products advertised as made with one or more clean ingredients, which they

12  perceive as containing real ingredients."  *Id.* at ¶ 29.  Plaintiff claims that "studies show that cheese

13  flavors evoke strong emotional responses from consumers" and that cheese is a "significant source

14  of protein."  *Id.* at ¶¶ 36, 41.  As Plaintiff sees it, the idea that the Product contains real cheese—as

15  captured by the front packaging as a whole and the "made with real cheese claim" in particular—

16  is what gives the Product more value than a generic imitator.  *Id.* at ¶¶ 72-73.

17      The Complaint fails to plausibly show that "a significant portion of the general consuming

18  public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner*,

19  838 F.3d at 965 (citation omitted).  Plaintiff's argument is that cheese is the characterizing

20  ingredient in the Product and that the Product is accordingly deceptively labeled because it contains

21  only a de minimis amount of cheese.

22      In approaching this argument, the Court begins by determining whether the Product's front

23  label is unambiguously deceptive.  It is certainly not deceptive in any literal or absolute sense.  The

24  Product states that it is made with real cheese; it does in fact contain real cheese.  And Plaintiff

25  does not allege that when prepared, it is not in fact "cheesy."  Rather, Plaintiff's theory is that the

26  packaging "unambiguously convey[s] the Products contain more than a de minimis amount of

27

28
[2]  Paragraph 47 contains nine different product images.  Cheeseburger Macaroni is the first one
listed on page 11 of the Complaint.

cheese." ECF No. 18 at 25. However, the Complaint's allegations do not show that a reasonable consumer would understand that the product unambiguously contains more than a de minimis amount of real cheese. Reasonable consumers would understand that the boxed Product contains dried macaroni and a seasoning packet, and that when cooked (and combined with meat and water or milk), it then contains macaroni, meat, and a cheesy sauce. *See* ECF No. 1 at ¶ 2. In short, the Product's front label does not unambiguously oversell the amount or proportion of real cheese in the Product.

Given that the Product's front packaging is not plausibly unambiguously deceptive, reversion to the packaging as a whole is appropriate. Consumers who are curious about the amount of cheese in the Product "would necessarily require more information before reasonably concluding that the label is making a particular representation." *Whiteside*, 108 F.4th at 781. That additional information is furnished by the ingredient list on the back of the box, which makes clear that the product contains 2% or less of cheese. Any question about the amount of cheese in the Product is then resolved. A reasonable consumer would not plausibly be misled by the Product for this reason.

Plaintiff states in her opposition brief that she was not obligated to consult the ingredient list. ECF No. 18 at 25. But the Court understands consulting the ingredient list to be the point of the Ninth Circuit's ambiguity/back of the box doctrine in a situation like this one. If an ambiguity on the front packaging of a given product matters to a consumer—in this case, how much cheese is in the Product—and the back packaging resolves that ambiguity, the consumer cannot claim to have been misled. *See Puri v. Costco Wholesale Corp.*, No. 5:21-cv-01202-EJD, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) ("Even if a consumer were concerned that the Product's coating is not purely chocolate made from primarily cacao bean ingredients, any 'potential ambiguity could be resolved by the back panel of the products,' as any 'reasonable shopper' would know.").

Similar deceptive packaging claims have been dismissed by other judges within this Court and by other courts. In *Garza*, 760 F. Supp. 3d 1039, 1045-46 (E.D. Cal. 2024), the plaintiff claimed she was misled by references to "real" chicken or pork on the front of dog chews. Similar to Plaintiff's claim in this case, the plaintiff in *Garza* claimed those references suggested that meat was the predominant ingredient. *Id*. at 1048-49. Another judge of this Court found the

package's front ambiguous, examined the rest of the package, and dismissed the case. *Id*. at 1051. "A reasonable consumer necessarily requiring more information as to the predominance of the meat in the dog chews could simply refer to the full ingredients list on the back label … The Court concludes that in reviewing the entirety of the package a reasonable consumer could not be misled to believing that the first ingredient of the dog chews is meat . . ." *Id.* So too for a reasonable consumer requiring more information as to the amount of cheese in a Hamburger Helper product.

Similarly, in *Red v. Kraft Foods, Inc*., No. 10-cv-1028-GW, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), the plaintiffs challenged a phrase—"Made with Real Vegetables" on cracker packaging—that they conceded to be true. *Id*. at \*2. The court concluded that no reasonable consumer would read "packaging [that] boasts that the crackers are made with real vegetables and depicts vegetables" to mean that the crackers are "healthy and contain[ ] a significant amount of vegetables." *Id*. at \*3 (emphasis in original). The court explained, "the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables." *Id*. Similar logic applies here: The Product is a box of macaroni with a seasoning packet that can be constituted into a cheesy meal, "and a reasonable consumer will be familiar with the fact" that such a product "is not composed primarily" of real cheese.

Another case in the "made with real cheese" category is *Lemke v. Kraft Heinz Food Co.*, No. 21-cv-278-wmc, 2022 WL 1442922 (W.D. Wis. May 6, 2022). There, the plaintiff alleged the label on Bagel Bites was misleading because it represented that the bagels were made with real mozzarella cheese and tomato sauce. The front of the package said "mozzarella cheese" in bold and also "made with real cheese." The back of the package described a "cheese blend" consisting of "part-skim mozzarella cheese," "modified food starch," and "skim milk." The court looked to federal regulations that defined mozzarella cheese and stated it may include "clotting enzymes" and "salt," and said that "part-skim mozzarella is nevertheless mozzarella cheese under current, preemptive FDA law, or, at least, plaintiff has failed to plausibly allege that it is not." *Id*. at \*4. The court also noted there was no representation that the product was "100%" or "only" mozzarella

9

1    cheese.  *Id*. at 3.  The court granted the motion to dismiss and found that a reasonable consumer

2    would not be misled.  The outcome here is perhaps even clearer because the Product's ingredient

3    list simply includes "cheddar cheese," not a composite of ingredients that amount to cheese only

4    under federal regulations.

5            Ultimately, the Court's analysis here turns in large part on the character of the Product itself:

6    a food that when prepared primarily includes pasta and some kind of meat, even if "cheese" or

7    "cheesiness" characterizes that food.  Plaintiff does not allege, and it is not plausible that a

8    reasonable consumer would believe, that the Product—either in its dry or prepared form—is

9    primarily constituted by cheese based on the front of the box.  That being the case, the fact that real

10   cheese forms only a small part of the Product does not make it deceptive.

11           Plaintiff cites to *Frias v. Mars Wrigley*, 2024 WL 3988667 (S.D.N.Y. Aug. 28, 2024),

12   another case dealing with the "made with real cheese" phrase.   Plaintiffs alleged that Mars

13   deceptively marketed their "Combos Cheddar Cheese" stuffed snacks as "made with real cheese"

14   when it is predominantly "vegetable fats and cheese byproducts."  *Id*. at *1.  Plaintiffs alleged the

15   primary ingredient was palm oil, and there was less than 2% real cheese.  Plaintiffs argued that

16   "made with real cheese" combined with the photo on the package of a block of cheese would lead

17   a reasonable consumer to think that it consisted "entirely or predominantly" of real cheese.  The

18   court cited a Second Circuit opinion and stated: "Under the logic of *Mantikas* [*v. Kellogg Co*., 910

19   F.3d 633 (2d Cir. 2018),] an advertising claim can be misleading even if it is technically true."  *Id*.

20   at 3.  The court rejected defendant's argument that any confusion could be cleared up by looking

21   at the ingredient label.  However, *Frias* involved distinguishable facts.  In *Frias* the product was

22   "Cheddar Cheese" flavored.  In light of that fact, the court found it "at least plausible … that a

23   reasonable consumer would instinctively understand 'cheddar cheese'-flavored 'stuffed snacks' to

24   be filled predominantly with cheese."  *Id*.  By contrast, the Product in this case does not include the

25   name of a real type of cheese (i.e., cheddar) on the front of the box.  *Frias* is also not particularly

26   persuasive—and is perhaps at odds with Ninth Circuit doctrine—given that it did not seek to resolve

27   any ambiguity as to amount of cheese with reference to the packaging as a whole.

28           While *Henderson v. Gruma Corp*., No. 10-cv-04173 AHM, 2011 WL 1362188 (C.D. Cal.

10

Apr. 11, 2011), also bears some relation to this case, it too is materially distinguishable.  In *Henderson,* the plaintiffs challenged statements on the defendant's Mission Guacamole and Mission Spicy Bean Dip products.  *Henderson* ruled at the motion to dismiss stage on several allegedly deceptive claims about the defendant's products.  Most relevant to the dispute here, the court found the "label and use of the term 'Guacamole' could deceive a reasonable consumer" where the label included the word "GUACAMOLE" in large capital letters, the label "prominently display[ed] large pictures of avocados," and "the dip itself [wa]s green-colored, as would be avocados."  *Id*. at *12.  The court held "a reasonable consumer could interpret [the] label to imply that the product is indeed guacamole, which it is not, as it allegedly contains less than 2% avocado powder."  *Id*.  By contrast, the Product at issue in the instant case does not purport to be something that it is not.  A consumer could reasonably expect that a green dip, labeled "GUACAMOLE" and displaying pictures of avocados was in fact guacamole, a dip primarily composed of avocados. However, a reasonable consumer would  understand that Hamburger Helper, a box of dried pasta and powdered seasoning, is not predominantly cheese.

Moreover, the *Henderson* plaintiffs also challenged the claim that the dip was made "with garden vegetables," and this unsuccessful claim is akin to the instant challenge to the "made with real cheese" description.  The district court noted that the product does in fact contain vegetables that could be grown in a garden, as it contained "avocado powder, dehydrated onion, garlic powder, and bell pepper."  *Id.* at *12.  The court observed the label "does not claim a specific *amount* of vegetables in the product, but rather speaks to their presence in the product, which is not misleading."  *Id.* (emphasis in original).  The court accordingly dismissed the claims associated with the "with garden vegetables" phrase.  Similarly, here, "Made with Real Cheese" does not make a representation as to a specific amount of cheese, and the Product does contain cheese.

A reasonable consumer would not plausibly be deceived by the Product and Plaintiff's claims under the CLRA and UCL should accordingly be dismissed.

## 2. Breach of Express Warranty Claim

Plaintiff also contends in Count III that Plaintiff breached an express warranty under California Commercial Code § 2313.  Under § 2313, "express warranties are created by (1) any

1    affirmation of fact or promise made by the seller to the buyer which relates to the goods and

2    becomes part of the basis of the bargain, and (2) any description of the goods which is made part

3    of the basis of the bargain."  *Keith v. Buchanan*, 173 Cal.App.3d 13, 19 (Cal. Ct. App. 1985).  A

4    seller's "affirmation of the value of the goods or an expression of opinion or commendation of the

5    goods does not create an express warranty."  *Id.*  "To allege facts identifying the exact terms of the

6    warranty, a plaintiff must provide specifics about what the warranty statement was, and how and

7    when it was breached."  *T & M Solar v. Lennox Intern., Inc.*, 83 F.Supp.3d 855, 875 (N.D. Cal.

8    2015) (internal citation and quotation omitted).  To constitute an actionable claim, the statement

9    "must be specific and unequivocal."  *Id.*

10   Again here, *Garza* is instructive.  In *Garza*, the plaintiff claimed a breach of an implied

11   warranty and contended the label on the pet food "made an implied promise that the Product is

12   predominantly made with meat."  760 F.Supp.3d at 1051.  The court said that a plaintiff who claims

13   breach of implied warranty must show that the product "did not possess even the most basic degree

14   of fitness for ordinary use."  *Id.*  The *Garza* court noted that although the breach of warranty claim

15   "may rely solely on alleged affirmative representations made by the defendant on the products

16   label," in that case defendant "did not affirmatively represent that the dog chews were

17   predominantly made from meat."  *Id.* at 1051-52.  The label of the product said "made with real

18   chicken, pork, & duck."  This is substantially similar to the instant case, as the plaintiff in *Garza*

19   was imposing an assumption that the product was "predominantly" made with real meat, which is

20   not what the label said.  Here, Plaintiff seeks to impose her assumption that the Product is made

21   with more than a de minimis amount of real cheese.  The label states "made with real cheese," and

22   it is made with cheese—it is just 2% or less real cheese.

23   Plaintiff contends the express warranty is the "Products are made with more than a de

24   minimis amount of real cheese."  ECF No. 1 at ¶ 121.  But the Product contains no such express

25   statement or other similar promise.  This claim fails.

26                              **C.  Leave to Amend**

27   The Court now considers whether Plaintiff should be granted leave to amend.  Having

28   reviewed the complaint and the packaging contained therein, there is not "a probability that a

significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Whiteside*, 108 F.4th at 778.  Given that conclusion and the reasoning on which it is based, leave to amend would be futile.  *See Painter v. Blue Diamond Growers*, 757 F.App'x 517, 519-20 (9th Cir. 2018) (finding amendment would be futile where no amendment "could improve the plausibility of the consumer confusion allegations [plaintiff] asserts").  Where a court's examination of the product label at issue reveals no reasonable consumer could be misled, dismissal without leave to amend is proper.  *See, e.g., Garza v. Spectrum Brand Pet LLC,* 760 F.3d 1039, 1051 (E.D. Cal. 2024) ("Based on the undisputed nature of the packaging, it appears that amendment could not remedy the absence of a consumer deception claim.  Thus, the motion is granted with prejudice and without leave to amend."); *Workman v. Plum Inc*., 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015) (dismissing without leave to amend UCL and CLRA claims where labels not deceptive and cannot be changed by new complaint); *Henderson*, 2011 WL 1362188, at *14 (dismissing UCL, FAL and CLRA claims with prejudice where labeling statement did not claim specific amount of vegetables in product, but spoke to "presence" in product, which is not misleading).  Moreover, while Plaintiff requested leave to amend in her opposition brief, ECF No. 18, she did not indicate what additional facts she could allege that would cure the defects identified by Defendant.  There are no facts that Plaintiff could add through amendment that would show a reasonable consumer would be misled by the Product's cheese-related representations.

### D.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Defendant Eagle Foods' Motion to Dismiss (ECF No. 12), is GRANTED and this action is DISMISSED without leave to amend.

2. The Clerk shall enter Judgment in favor of Defendant and close this case.

DATED: July 17, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

13